## Welch *et al. versus* Kline.

1. A man's creditors have no legal claim on his labor unless his earnings are realized and invested in some kind of property which can be reached by execution.

2. In an issue under a sheriff's interpleader to try whether goods in a store were the wife's, it was *held*, that if it had been shown that any particular article had been purchased with the husband's money or credit, the execution-creditor would have been entitled to a verdict for such article.

March 16th 1868. Before STRONG, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius. READ, J., absent.

Error to the Court of Common Pleas of *Lehigh county:* No. 379, to January Term 1867.

This was a feigned issue between Serena Kline, plaintiff, and

Welch & Co., Joseph Keller, George Roth and Benjamin Weider, defendants, under the Sheriff's Interpleader Act, to try whether certain goods taken under executions at the suit of the defendants against Solomon Kline were the property of Serena Kline, who was the wife of Solomon.

On the trial, before Maynard, P. J., the plaintiff called Samuel D. Lehr, who testified:—

"I was at one time owner of this store stock; I sold it to Mrs. Kline July 8th 1866; on July 11th possession was taken. The purchase-money was $1159; $300 was paid cash, $300 by note of Thomas Steckel, considered cash, balance note ($540) of Mr. and Mrs. Kline; Kline and wife gave a note to Steckel for the $300, and Steckel gave check on bank; I received money on check; $540 note was at sixty days, but Kline paid it before the time expired. Mrs. Kline was by when it was paid; it was paid in my room; we live together; I think no other persons present; paid note say two weeks after date of note; contract of sale was made in the store; Mr. and Mrs. Kline lived 150 feet from the store. The $540 was paid, $500 at one time and $40 paid say a month after on a settlement."

On cross-examination, he said:—"I made the bargain with Solomon Kline; we were alone; he gave me the $300 on account of the stock, but Mrs. Kline was present; Kline and his wife gave the note to Steckel for the $300, and Kline paid me the $540; I had nothing to do with the wife in making the bargain; Kline was working in Mauch Chunk before he bought the store. Mrs. Kline spoke to me first about buying out the stock; when she came to the store she asked me whether it was so, that I was to sell out the store? I said yes, it was so; Mr. Steckel said it was something for them or her, it would suit them very well as they lived so close to the store; she said if it was my intention to sell, she would wait until Kline came home and see what he said, whether he would like to attend to it. The bargain was completed at the time the money was paid; he made the contract and handled the money; the contract was made before the money was paid; he told me his wife had told him it was my intention to sell out. I receipted for the money in the name of Mrs. Kline; I wrote the receipt and gave it to Mrs. Kline in her hands; he paid the $300 in my hands; the $540 I think I receipted when I first sold the stock; I think Mr. Kline produced the $300 at the store."

There was evidence that when the sale of the store goods was made they had not money enough, and Steckel, who was there, gave Mrs. Kline $300 and took the note of her husband and herself for the money. There was evidence also that the wife had derived $4000 from her father, who died about July 1854; also, evidence of her ownership of land and conveyance of the same August 8th 1866, for the consideration of $7100; of payment

[Welch *v.* Kline.]

of rent to her for two years at $450 per annum. There was evidence that the husband had bought goods as her agent; that the goods were bought sometimes for cash and sometimes on credit; that goods came marked to Solomon Kline, agent; that Kline employed the clerk, kept the books, took care of the money, &c.; the sign was "Solomon Kline, Agent;" Mrs. Kline sometimes sold goods and attended to matters about the store; she attended to her family and he carried on the business; there was an advertisement in a newspaper, "Solomon Kline, dealer in all kinds of groceries," &c., and other evidence as to the manner of conducting the store, &c.

The plaintiff asked the court to charge:—

"If the jury believe that the evidence clearly shows that the plaintiff's money was used in the purchase of the original stock for her, and that the proceeds of sale of the same and her money were used in replenishing the stock for her, plaintiff can recover, notwithstanding the labor and care of her husband in and about the store, unless the transactions were under cover, and fraudulent and collusive in point of fact as to creditors."

The defendants asked the court to charge:—

"7. If the jury believe that any part of the earnings of the plaintiff's husband was applied to the purchase of any of the goods, then the verdict should be for the defendants."

"10. Under all the evidence in the cause, the verdict must be for the defendants."

The court amongst other things charged:—

"The goods in question were ostensibly in the possession of the husband, he superintended the store, acted as salesman and clerk generally. The presumption of law is, that the goods belonged to the husband, and to entitle the plaintiff to recover, she must satisfy the jury by clear and indisputable evidence that these goods were her own property, and that her husband had no right of property in them. If she bought the goods with her own money of Lehr in the first instance, that is, the entire stock, amounting, as stated by the witnesses, to about the sum of $1100, and carried on the business in her own name and replenished the stock from time to time, as occasion required, with the proceeds of the sales of the original stock, and thus acquired title to all the goods levied on by defendants' executions, she is entitled to recover in this issue.

"The jury must not only be satisfied that the wife had money of her separate estate to have made the purchase, but they must be fully satisfied that the goods were actually purchased and paid for with her own money."

They affirmed the plaintiff's point, and answered the 7th and 10th points of the defendants as follows:—

"7. This is true as a general proposition: if any considerable portion of the goods are purchased as stated in the point, the con-

[Welch v. Kline.]

clusion would be correct. But the court would not say if *any* trifling article in a large stock of goods belonging to the wife had been purchased and paid for by the husband, that it would authorize the seizure of the whole stock as property of the husband."

"10. We decline to give the instruction prayed for in this point, but leave the facts to the jury as stated in our general charge."

There was a verdict for the plaintiff.

The defendants took a writ of error.

Their 1st, 2d and 3d assignments were, the charge of the court and affirming the plaintiff's point.

The 4th assignment, the answer to the defendants' 7th point.

. The 5th and 7th, submitting the case to the jury.

. *J. D. Stiles* (with whom were *P. Wyckoff* and *E. Hollem*), for plaintiffs in error, cited Hallowell v. Horter, 11 Casey 375; Gamber v. Gamber, 6 Harris 363; Bradford's Appeal, 5 Casey 513; Topley v. Topley, 7 Id. 328; Bear v. Bear, 9 Id. 525; Auble v. Mason, 11 Id. 261: Walker v. Reamy, 12 Id. 410; Winter v. Walter, 1 Wright 155; Rhoads v. Gordon, 2 Id. 277; Wieman v. Anderson, 6 Id. 311; Robinson v. Wallace, 3 Id. 129.

*J. H. Oliver* and *C. M. Runk*, for defendant in error, referred to Gamber v. Gamber, Walker v. Reamy, Hallowell v. Horter, Wieman v. Anderson, *supra;* Flick v. Devries, 14 Wright 266; Gillespie v. Miller, 1 Id. 247; Manderbach v. Mock, 5 Casey 43; Keeney v. Good, 9 Harris 355.

The opinion of the court was·delivered, March 23d 1868, by

SHARSWOOD, J.—The instructions of the court below to the jury, which are complained of in the 1st, 2d and 3d errors assigned, .conform accurately to the principles, which have been settled by this court in Manderbach v. Mock, 5 Casey 43; Keeney v. Good, 9 Harris 355; Wieman v. Anderson, 6 Wright 311; Flick v. Devries, 14 Id. 266, and other cases. It would be entirely a work of supererogation to review and reaffirm these principles. Wieman v. Anderson was a case in all its material features not distinguishable from this. There, after an alleged gift of a stock of goods to the wife, the business went on in the same store, both husband and ·wife attending thereto : most of the purchases, but not all, were afterwards made in the name of the wife, the husband continuing to attend the store, make sales, and receive moneys ; and some of the goods in the store purchased upon credit from the witnesses examined were unpaid for at the time of the trial; yet it was held that the wife being the owner of the stock of goods in her own right could trade with them and buy other goods to be held and traded with exempt from seizure for her husband's debts. Robin-

[Welch *v.* Kline.]

son *v.* Wallace, 3 Wright 129, is not in conflict with Wieman *v.* Anderson, for in that case the wife had not any separate estate, and the stock was purchased and the business carried on solely on credit.

The 4th error assigned is that the court below refused to affirm the following point : " If the jury believe that any part of the earnings of the plaintiff's husband was applied to the purchase of any of the goods, then the verdict should be for the defendants ;" and in the answer given to it.   It is unnecessary to examine whether there was error in this refusal and answer ;  because after a close examination of the record we have failed to discover any evidence in the cause, to which the point could possibly be applied.   Shimer's testimony showed that the goods bought of him were solely on the credit of the wife, and there was no evidence that the husband, during the period in question, had earned any money in an independent employment.   He lived with, and so far as appears was maintained by his wife, and this was the only consideration for his services as her agent.   A man's creditors have no legal claim on his labor, unless his earnings are realized and invested in some kind of property, which can be reached by process of execution.   It may be doubtful whether this is a case in which the maxim *de minimis* applies, and certainly if. any particular article in the store had been shown to have been purchased with the husband's money or on his credit, the defendants would have been entitled to a verdict for such article.   But there being no evidence of this, no injury was done to the plaintiffs in error by the matter contained in this assignment.

The 6th error has not been assigned *secundum regulam,* and if it had been, it would not have availed the plaintiffs.   The evidence offered and rejected was clearly irrelevant.

The 5th and 7th errors assigned complain that the case was submitted to the jury.   But the whole question of the exclusive ownership of the wife in the goods, derived from her own means, and applied by her to the purchase of the stock of goods in question, and the carrying on of the business in her name and on the credit of her separate property, was essentially one of fact for the jury, and it would have been manifest error in the court to have withdrawn it from their consideration.

Judgment affirmed.